**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| FAIRFIELD UNIVERSITY,<br><br>              Plaintiff,<br><br>   v.<br><br>VIGILANT INSURANCE COMPANY AND<br>FEDERAL INSURANCE COMPANY,<br><br>              Defendants. | Civil Action No. _____<br><br><br><br><br>September 14, 2020 |

## COMPLAINT

Fairfield University ("Fairfield"), with knowledge as to its own actions, and upon information and belief as to other matters, hereby alleges against Defendants Vigilant Insurance Company ("Vigilant") and Federal Insurance Company ("Federal") (both part of the Chubb Group of Insurance Companies and Vigilant and Federal referred to collectively herein as "Chubb") as follows.

## NATURE OF THE ACTION

1.      This is a civil action by Fairfield against Chubb for breach of their contractual obligations to defend and indemnify Fairfield against lawsuits alleging liability in connection with sexual misconduct in Haiti by Douglas Perlitz ("Perlitz").

2.      Chubb sold primary and excess liability insurance policies to Fairfield covering Fairfield for the period of July 1, 1997 to July 1, 2009 ("Chubb Policies").

3.      These policies provide coverage for the costs of defending Fairfield against "suits" alleging "bodily injury" caused by an "occurrence."

4.      The Chubb Policies also provide coverage for the costs of settling "suits" against Fairfield alleging "bodily injury" caused by an "occurrence."

5.      In 2019, Fairfield and other defendants to the litigation arising out of Perlitz's abuse entered into a class action settlement with the plaintiffs in *Gervil St. Louis v. Perlitz*, Civil Action No. 3:13-cv-01132-RNC ("*Perlitz II*") and other identified and unidentified potential claimants to completely and forever resolve Fairfield and the other defendants' liability to all potential claimants for the actions of Perlitz.

6.      Chubb has refused to pay a covered portion of the settlement sums paid by Fairfield in the 2019 settlement.

7.      In addition, Chubb has refused to pay a substantial portion of the defense costs that Fairfield has spent or incurred to defend the *Perlitz II* litigation.  As a result, Fairfield is currently owed defense costs incurred in defending the litigation.

## PARTIES

8.      Plaintiff Fairfield is a non-profit university and  a corporation organized under the laws of Connecticut, with its principal place of business in Fairfield, Connecticut.

9.      Defendant Vigilant is an insurance company, part of the Chubb Group of Insurance Companies, organized and existing under the laws of the State of New York with its principal place of business in New Jersey.

10.     Defendant Federal Insurance Company is an insurance company, part of the Chubb Group of Insurance Companies, organized and existing under the laws of the State of Indiana with its principal place of business in New Jersey.

## JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because Plaintiff is a citizen of Connecticut, and Defendants are citizens of New York, New Jersey, and Delaware.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

12.   This Court has personal jurisdiction over Defendants because, within the relevant time period, each Defendant has either been licensed to do business in Connecticut; transacted substantial business in Connecticut; insured assets, liabilities and risks located in Connecticut; sold insurance policies in Connecticut and/or otherwise has sufficient contacts with Connecticut.

13.   Venue in this judicial district is proper under 28 U.S.C. § 1391.

## BACKGROUND

### The First *Perlitz* Litigation and Settlement

14.   In 2011, dozens of young men from Haiti brought the first set of claims against seven defendants, including Fairfield as well as Perlitz, alleging that all were liable to the plaintiffs for Perlitz's sexual abuse of them while they were minors living or studying at Project Pierre Toussaint in Haiti ("PPT") while Perlitz was PPT's director.

15.   PPT was a non-profit school and social-service organization providing housing, education, and other services to homeless boys in Haiti.  Perlitz founded PPT in 1997 and served as its director from that time until 2008.  Beginning in or about 1999, PPT was overseen by a Connecticut non-profit corporation named the Haiti Fund.

16.   After learning of allegations that Perlitz was sexually abusing minors at PPT, the Haiti Fund's board of directors undertook an investigation into the allegations and terminated Perlitz in 2008.  Perlitz was arrested in 2009 and was convicted in 2010 of sexually abusing several PPT students.

17.     The first set of lawsuits brought by victims of Perlitz's actions was consolidated as *Jean-Charles v. Perlitz, et al.*, Civil Action No. 3:11-cv-00614-RNC ("*Perlitz I*") in the United States District Court for the District of Connecticut.

18.     In June of 2013, Fairfield and other defendants entered into a settlement with the *Perlitz I* plaintiffs.  Chubb paid Fairfield's share of that settlement in full, but did not disclose until years later the manner in which it had allocated those settlement sums across the multiple triggered policy periods. Chubb also used Fairfield's limits of the Chubb Policies to settle on behalf of Father Paul C. Carrier ("Father Carrier").

### The Second *Perlitz* Litigation and Settlement

19.     After the public announcement of the parties' settlement in *Perlitz I*, more than fifty (50) additional plaintiffs filed lawsuits against Perlitz and additional defendants, including Perlitz, the Haiti Fund, Fairfield, and Father Carrier.  These plaintiffs' claims were consolidated in the United States District Court for the District of Connecticut as *Gervil St. Louis v. Perlitz*, Civil Action No. 3:13-cv-01132-RNC ("*Perlitz II*").

20.     The *Perlitz II* suit alleged that Fairfield was liable for negligent supervision of Perlitz and for breach of a fiduciary duty to the plaintiffs.  Plaintiff requests that the Court take judicial notice of the complaint in *Perlitz II.*

21.     In early 2019, the defendants successfully settled the *Perlitz II* litigation by asking the District Court to certify a settlement class and approve the proposed settlement as reasonable. The District Court gave preliminary approval to the settlement, no class members objected, and the District Court then gave final approval.  The period to appeal the settlement has run with no appeal being filed, and, therefore, the settlement has become final.  No class member has opted out of the settlement.

22.     Chubb participated in the settlement discussions and consented to the settlement.

23.     While Chubb consented to Fairfield's settlement share, it only funded a portion at the time of settlement, requiring Fairfield to advance a significant balance of the settlement from its own funds in order to effectuate the settlement and end the litigation.

24.     Fairfield and Chubb agreed to resolve the final allocation of responsibility between Fairfield and Chubb for Fairfield's settlement payment at a later date. Fairfield brings this lawsuit in part to recover the funds Fairfield advanced.

### PPT and The Haiti Fund

25.     PPT was a non-profit school and social-service organization providing housing and other services to homeless boys in Haiti. Perlitz, an individual with whom Fairfield had no employment relationship and over whom it exercised no control, founded PPT in 1997 and served as its director from that time until 2008.The alleged abuse by the *Perlitz I* and *Perlitz II* plaintiffs ("PPT Plaintiffs") took place in Haiti at PPT, and not on Fairfield's premises.

26.     Beginning in or about 1999, PPT was overseen the Haiti Fund. The Haiti Fund alone had responsibility for PPT.

27.     Fairfield was not involved in the creation or maintenance of PPT or the Haiti Fund and did not participate in or have any control over the ongoing operations of PPT or the Haiti Fund at any time, before or after creation of the Haiti Fund.

28.     At all times, the Haiti Fund maintained an independent corporate existence, separate from Fairfield.

### Father Carrier

29.     Father Carrier was a former board member of the Haiti Fund and a former chaplain of Fairfield.

30.     Father Carrier did not have any supervisory responsibility for the PPT Plaintiffs while volunteering with PPT.

31.     Father Carrier did not care for (medically or otherwise) the PPT plaintiffs or have any custody or control over the PPT plaintiffs while volunteering with PPT.

32.     Father Carrier did not provide or observe any staff training at PPT.

33.     Father Carrier was acting outside the scope of his role with Fairfield in connection with his independent involvement and independent work with the Haiti Fund and PPT.

34.     Father Carrier was not acting as an agent of, on behalf of, or subject to Fairfield's control in his role as Board Member of the Haiti Fund with PPT.

35.     Father Carrier had no role with Fairfield after May of 2006 and was not acting for or on behalf of Fairfield in any capacity after May of 2006.

36.     Father Carrier does not qualify as an "insured" on the Chubb Polices for liability arising out of his independent involvement and independent work for the Haiti Fund and with PPT.

37.     Any contribution to the settlement of *Perlitz II* on behalf of Father Carrier should not reduce the limits of Chubb Policies available to Fairfield.

## The Chubb Policies

38.     Throughout the period of abuse alleged in *Perlitz I* and *Perlitz II*, several primary and excess Commercial General Liability insurance policies were issued to Fairfield by Chubb through Vigilant and Federal, including:

a)  Primary insurance policies issued by Federal from July 1, 1997 through July 1, 2009, with Policy Number 3524-72-90 and varying per occurrence and general aggregate policy limits  (the "Federal Primary Policies").

b)  Primary insurance policies issued by Vigilant from September 1, 2003 through July 1, 2009, with Policy Number 3539-02-58 and varying per occurrence and general aggregate policy limits (the "Vigilant Primary Policies").

     c)   Excess insurance policies issued by Federal from July 1, 1997 through July 1, 2009, with Policy Number 7975-64-39 and varying per occurrence and general aggregate policy limits (the "Federal Excess Policies").

39.     The Federal Primary Policies, Federal Excess Policies, and Vigilant Primary Policies (collectively, the "Chubb Policies") were issued to Fairfield, as the designated Named Insured.

40.     The Chubb Policies provide that employees of Fairfield are also "insureds," but "only for acts within the scope of their employment by [Fairfield] or while performing duties related to the conduct of [Fairfield's] business."

41.     The Chubb Policies provide liability coverage from July 1, 1997 through July 1, 2008, for both domestic and international risks.

42.     The primary policies during this period provided, in substantively identical terms, that Chubb "will pay damages that the **insured** becomes legally obligated to pay by reason of liability: imposed by law; or assumed in an insured contract; for **bodily injury** or **property damage** caused by an occurrence to which this coverage applies." (Emphasis in original).

43.     The Vigilant Primary Policies issued from July 1, 2004 through July 1, 2009 contain a "Non Accumulation of Limits" endorsement, which, in relevant part, provides as follows:

**Limits Of Insurance**

| | |
|---|---|
| **Non Accumulation Of Limits Of Insurance** | This policy is one of several policies issued by us or other member Insurers of the Chubb Group of Insurance Companies to you, and/or your subsidiary companies, to conform with various state jurisdictional requirements. It is agreed that any claim or **suit** which could be covered under two or more of these policies will be covered under only the policy with the highest limit of insurance available or, if the limits are the same, under only one of the policies. Regardless of the number of claims or **suits**, the number of policies, or the number of additional **insureds** which could be involved, the combined total annual aggregate limits of liability under all such policies to which this endorsement is attached will not exceed the aggregates stated below for any one policy year: |
| | General Aggregate Limit |
| | Products-Completed Operations Aggregate Limit |
| | Advertising Injury And Personal Injury Aggregate Limit |

All other terms and conditions remain unchanged.

44.     The Federal Excess Policies for the annual periods from July 1, 1997 through July 1, 2004 contained no exclusions for abuse or molestation claims, and Chubb has not disputed coverage under these policies.

45.     For each annual period from July 1, 2004 through July 1, 2007, the Federal Excess Policies contained a qualified sexual abuse and molestation exclusion, which provides:

> This insurance does not apply to any liability or loss, cost or expense arising out of:
>
> A.  The actual or threatened abuse or molestation by anyone of any person while in the care, control or custody of any **insured**; or
>
> B.  Any retention, employment, investigation, supervision or reporting to or failure to report to the proper authorities of a person for whom any **insured** is or ever was legally responsible and whose conduct would be excluded by paragraph A. above.

Federal Ins. Co. Excess Policy, Policy Number 7975-64-39, July 1, 2004 to July 1, 2005 (emphasis in original).

46.     This qualified sexual abuse and molestation exclusion does not apply to Fairfield because, *inter alia*, none of the PPT Plaintiffs were in the care custody or control of Fairfield or of any person for whom Fairfield is or ever was legally responsible.

47.     The Federal Excess Policies during the July 1, 2007 - July 1, 2008 and the July 1, 2008 – July 1, 2009 policy periods, contains an "Abuse or Molestation – Total" exclusion.  The language of this exclusion provides:

> This insurance does not apply to any liability or loss, cost or expense arising out of:
>
> A.  the actual or threatened abuse or molestation by anyone of any person; or
>
> B.      1.  employment, investigation, retention or supervision; or
>
>         2.   reporting to or failure to report to the proper authorities;

of any person for whom any **insured** is or ever was legally responsible and whose conduct would be excluded by subparagraph A. above.

Federal Ins. Co. Excess Policy, Policy Number 7975-64-39 ROC, July 1, 2007 to July 1, 2008 (emphasis in original).

48.     This "Abuse or Molestation – Total" exclusion does not apply to Fairfield because, *inter alia,* none of the PPT Plaintiffs were abused or threatened abuse by Fairfield or any of Fairfield's employees or persons for whom Fairfield is or ever was legally responsible.

49.     All of the conditions and requirements imposed by the Chubb Policies upon Fairfield, including payment of premiums, have been satisfied and/or have been waived and/or are subject to an estoppel against Chubb.

### The Coverage Dispute

50.     The Chubb Policies provide complete coverage for liability, defense and expenses associated with the *Perlitz II* litigation.

51.     Chubb has repeatedly and consistently refused to pay a covered portion of Fairfield's liability from the settlement of the *Perlitz II* litigation.

52.     Chubb has refused the covered defense costs that Fairfield incurred in defending the *Perlitz II* litigation.

### COUNT ONE: BREACH OF CONTRACT (INDEMNITY)

53.     Fairfield repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 53.

54.     By refusing to pay more than a partial share of the *Perlitz II* settlement and requiring its insured to advance its own funds in order to consummate the settlement, Chubb has breached its duty to indemnify Fairfield.

55.     As a direct and proximate result of Chubb's breaches of its contracts of insurance, Fairfield has been deprived of the full indemnity coverage to which it is entitled and for which it has paid substantial premiums.

56.     Further, as a direct and proximate result of Chubb's breaches of its insurance policies, Fairfield has been forced to incur and will continue to incur additional damages, including, without limitation, the time value of the *Perlitz II* settlement funds withheld by Chubb and advanced by Fairfield, lost time of administrators diverted from Fairfield's core educational purpose, and the attorneys' fees and other expenses incurred by Fairfield to pursue the indemnity coverage to which it is entitled.

## COUNT TWO: BREACH OF CONTRACT (DEFENSE COSTS)

57.     Fairfield repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 57.

58.     Chubb has breached its contractual obligations under its policies to provide full coverage for defense costs paid or incurred by Fairfield in connection with the *Perlitz II* litigation.

59.     As a direct and proximate result of Chubb's breaches of its insurance contracts, Fairfield has been forced to incur damages, including, without limitation, defense costs paid by Fairfield in connection with the *Perlitz II* litigation that should have been paid by Chubb, as well as the time value of the defense costs withheld by Chubb, lost time of administrators diverted from Fairfield's core educational purpose, and the attorneys' fees and other expenses incurred by Fairfield to pursue the defense coverage to which it is entitled.

## COUNT THREE: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH)

60.     Fairfield repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 60.

61.     At all relevant times, Chubb was under an obligation to act in good faith and to treat Fairfield fairly and reasonably.

62.     Throughout the investigation and adjustment of Fairfield's claims, Chubb and its agents have acted in bad faith and did so in one or more of the following ways:

a)  Chubb failed to and intentionally refused to conduct an adequate investigation of Fairfield's claims;

b)  Chubb has unjustifiably and intentionally refused to reimburse Fairfield for a covered portion of its defense fees;

c)  Chubb failed to and intentionally refused to perform a proper or justifiable allocation of its settlement of the *Perlitz I* claim;

d)  Chubb failed to and intentionally refused to reallocate the amounts it paid in settlement of the *Perlitz I* claim, which improperly drained coverage from policy periods where Fairfield should have been able to continue to access such coverage for the *Perlitz II* claims;

e)  Chubb failed and intentionally refused to acknowledge the fact that Father Carrier is not an insured under the Chubb Policies with respect to the *Perlitz I* and/or *Perlitz II* claims and, as a result deprived Fairfield of coverage that otherwise should have been available to it for settlement of the *Perlitz II* claim;

f)  Chubb has repeatedly and intentionally taken an unreasonable position with respect to application of multiple policy provisions to Fairfield's claim, forcing Fairfield to incur extensive legal expense to protect its interests and advocate for the coverage afforded by the Chubb Policies;

11

g) Chubb, both in its own right and through its agents, servants, and employees, intentionally and maliciously either failed to respond or failed to timely respond to Fairfield's multiple requests for prompt payment under the Policy; and

h) Chubb intentionally and unreasonably failed to honor its coverage obligations to Fairfield under the policies it issued, forcing Fairfield to advance substantial funds to effect the settlement of the *Perlitz II* claims, which are covered by the Chubb Policies.

63.     As a direct and proximate result of Chubb's reckless, intentional, and malicious conduct, Fairfield has suffered, and will continue to suffer damages including lost time of administrators diverted from Fairfield's core educational purpose, and the attorney's fees and other expenses incurred by Fairfield to pursue the indemnity and defense coverage to which it is entitled.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

64.     WHEREFORE, Plaintiff Fairfield requests that this Court enter judgment awarding Fairfield:

a) actual compensatory and consequential damages sustained by Fairfield as a result of the Defendants' breach of the Chubb Policies, plus interest according to law, in amounts to be established through proof at trial;

b) punitive damages as to Count Three;

c) reasonable attorneys' fees and other costs that Fairfield has incurred and will continue to incur in bringing this action, pursuant to Federal Rule of Civil Procedure 54 and other applicable law;

d)  pre-judgment interest under Conn. Gen. Stat. Ann. § 37-3a as well as post-judgment

interest as applicable; and

e)  such other relief as the Court may deem just and proper.

Dated:       September 14, 2020                    Respectfully submitted,

PLAINTIFF, FAIRFIELD UNIVERSITY

/s/Tracy Alan Saxe
Tracy Alan Saxe, Esq.
Celia B. Waters, Esq.
William S. Bennett, Esq.
SAXE DOERNBERGER & VITA, P.C.
35 Nutmeg Drive, Suite 140
Trumbull, Connecticut 06611
T: 203.287.2100
F: 203.287.8847
E: tas@sdvlaw.com
   cbw@sdvlaw.com
   wsb@sdvlaw.com